

**FILED**

Jul 24 2015

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY          s/ AKR          DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 22 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

ARTURO ESPARZA,

            Defendant - Appellant.

No. 13-50033

D.C. No. 3:11-cr-01451-MMA-1
U.S. District Court for Southern
California, San Diego

**MANDATE**

    The judgment of this Court, entered June 29, 2015, takes effect this date.

    This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

                    FOR THE COURT:
                    Molly C. Dwyer
                    Clerk of Court

                    Synitha Walker
                    Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ARTURO ESPARZA,<br>*Defendant-Appellant*. | No. 13-50033<br><br>D.C. No.<br>3:11-cr-01451-<br>MMA-1<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
November 18, 2014—Pasadena, California

Filed June 29, 2015

Before: Mary M. Schroeder and Jacqueline H. Nguyen,
Circuit Judges, and Jack Zouhary, District Judge. [*]

Opinion by Judge Nguyen

---

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a conviction for importing marijuana and remanded, in a case in which the defendant attempted to enter the United States, driving a car that had multiple packages of marijuana hidden in the gas tank and dashboard.

The only contested issue at trial was the defendant's knowledge, and specifically who owned the car.  At the time of the defendant's arrest, Diana Hernandez was the car's registered owner.

The panel held that Hernandez's statement to the Department of Motor Vehicles – that she had sold the car to the defendant six days before the defendant's arrest – was testimonial, and that because the defendant was not given an opportunity to confront her as a witness, the government's use of the hearsay statement violated the defendant's rights under the Confrontation Clause.  The panel concluded that the admission of Hernandez's statement, which the government used as proof that the defendant owned the car and therefore knew about the hidden drugs, was not harmless beyond a reasonable doubt.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kent D. Young (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and D. Benjamin Holley (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Arturo Esparza appeals his conviction for importing marijuana in violation of 21 U.S.C. §§ 952 and 960. On February 19, 2011, Esparza attempted to enter the United States, driving a car that had multiple packages of marijuana hidden in the gas tank and dashboard. At trial, the only contested issue was the critical fact of Esparza's knowledge, and specifically who actually owned the car he was driving.

At the time of Esparza's arrest, Diana Hernandez was the car's registered owner. The government did not call Hernandez as a witness. Instead, the government relied on two hearsay documents containing Hernandez's statement that she had sold the car to Esparza six days before his arrest. Hernandez made this statement to the California Department of Motor Vehicles ("DMV") only *after* she was notified by law enforcement that her car had been seized for smuggling drugs. The government used Hernandez's statement as proof that Esparza actually owned the car, and therefore

4                    UNITED STATES V. ESPARZA

knew about the hidden drugs.  Esparza, on the other hand, claimed that he borrowed the car from a friend to visit his children and attend their soccer game.  At the time of his arrest, Esparza's children lived in San Diego, California, with his mother, while he lived just across the border in Tijuana, Mexico.

The question that we must decide is whether the government's use of Hernandez's hearsay statement violated the Confrontation Clause.  We hold that because Hernandez's statement was "testimonial," *see Crawford v. Washington*, 541 U.S. 36 (2004), Esparza had the right to confront her as a witness.  His rights were violated because he was not given an opportunity to do so.  We also conclude that the admission of Hernandez's statement was not harmless beyond a reasonable doubt, and thus we vacate Esparza's conviction and remand.

## I

## A

In 2010, Esparza moved with his family from California to Tijuana, Mexico, just south of the border.  Shortly after the move, he separated from his girlfriend and the mother of their two children.  Esparza then sent his children to live with his mother in San Diego, California.

On February 19, 2011, Esparza drove a 1999 Chevy Lumina to the San Ysidro port of entry, which lies at the border between Tijuana and San Diego.  At the border checkpoint, a U.S. Customs and Border Protection ("CBP") narcotics dog alerted to the car's gas tank.  When questioned, Esparza claimed that the car belonged to a friend named Julio.  However, the CBP officer noticed that the registration

document given to him by Esparza showed that the registered owner was Diana Hernandez, a resident of California, not a person named Julio. Officers searched the car and found multiple packages containing over 50 kilograms of marijuana hidden in the gas tank and the dashboard.

Five days after Esparza's arrest, on February 24, 2011, CBP sent Hernandez a written Notice of Seizure, informing her that the government had seized the Chevy Lumina registered in her name on February 19, 2011 at San Ysidro "because it . . . transported, concealed, or facilitated the sale, receipt, possession, or importation of 50.12 kgs marijuana" in violation of four federal criminal statutes. The Notice further stated, "If you no longer own or hold an interest in the seized property, please return this notice to our office and provide the name and address of the party that currently owns the property."

On March 21, 2011, about four weeks after Hernandez received the Notice of Seizure, she sent the DMV a Notice of Transfer/Release of Liability form, which is a standard DMV form that owners file to notify the DMV of a vehicle sale. This form also transfers liability for traffic violations and civil litigation from a car's seller to its new owner. The form that Hernandez sent to the DMV contains her signed statement that she sold the Lumina to "Arturo Esparza" on February 13, 2011—six days before Esparza's arrest.

On April 15, 2011, Esparza was indicted on one count of knowingly importing marijuana in violation of 21 U.S.C. §§ 956 and 960. Prior to trial, Esparza moved to exclude the Notice of Transfer/Release of Liability form and a printout of information stored in DMV computers concerning the Chevy Lumina (the "DMV Printout"). Similar to the Notice

of Transfer/Release of Liability form, the DMV Printout reflects Hernandez's out-of-court statement that she sold the Chevy Lumina to Esparza on February 13, 2011. During two pretrial hearings, Esparza argued that the two documents should be excluded on the grounds that Hernandez's statement was inadmissible hearsay, and its admission would violate the Confrontation Clause. In response, the government said that Hernandez would testify during trial, and thus there was no right to confrontation concern. The district court's analysis then focused mainly on whether a hearsay exception applied, and did not address the Sixth Amendment objection. After concluding that several hearsay exceptions applied to Hernandez's statement, the district court ruled that the documents were admissible.

**B**

In July 2012, the district court presided over a three-day jury trial. On the second day, the government informed the court that it had decided not to call Hernandez as a witness, even though she was on the government's witness list and at the courthouse. The government then called Department of Homeland Security ("DHS") Special Agent Dina Glaze, who testified at length about Hernandez's hearsay statement that she had sold the car to Esparza, as reflected on the DMV Printout, which the court admitted over Esparza's renewed objection. Agent Glaze testified that the DMV Printout reflected the recording of Hernandez's Notice of Transfer/Release of Liability form, which meant that "the ownership of the vehicle" changed from Hernandez to Esparza—*i.e.*, that Esparza owned the car.

Esparza did not testify, but called four witnesses in the defense case. The first was Hernandez's ex-boyfriend, Felipe Sanchez Escobedo ("Sanchez"), who testified that he

did not know Esparza.  Sanchez explained that in January 2011, his ex-girlfriend Hernandez gave him her Chevy Lumina to sell.  Around February 2011, he sold the car to a man named Ricardo Dominguez Morales ("Dominguez"), who was a friend of Sanchez's boss.  On the day of the sale, Sanchez did not have the car's title with him, so he arranged to have Dominguez return the next day to pick up the title.  However, Dominguez, who took possession of the car on the day of the sale, never returned for the title.

Three weeks after the sale, Sanchez received a call from Hernandez, who was very upset.  (Agents had seized the car and arrested Esparza in the interim.)   Concerned that Hernandez "was going to be in trouble" because of Esparza's arrest, Sanchez went to Dominguez's house to confront him and force him to "assume responsibility for the car."  After the confrontation, Dominguez gave Sanchez documents relating to the sale of the car, including a Notice of Transfer/Release of Liability form that was partially filled out to indicate that Hernandez sold the car to "Arturo Esparza."  Dominguez's name does not appear anywhere on the form.  In turn, Sanchez gave the form to Hernandez, who presumably signed it and sent it in to the DMV.  On cross-examination, the government attempted to impeach Sanchez with the Notice of Transfer/Release of Liability form signed by Hernandez.  However, Sanchez repeatedly insisted that he sold the car to Dominguez, not Esparza, contrary to what the form reflects.

The defense also called as a witness DHS Special Agent Jeffrey Richardson.  Agent Richardson testified that on July 7, 2011, as part of the government's continuing investigation after Esparza's arrest, he interviewed Hernandez, the registered owner of the car.   During the interview, Hernandez admitted to Agent Richardson that she did not

personally sell her car, but instead gave it to her ex-
boyfriend, Sanchez, who sold it for her in January 2011.
Hernandez later faxed to Agent Richardson a photocopy of
the Notice of Transfer/Release of Liability form that she had
sent to the DMV, along with a photocopy of Esparza's
driver's license.   Agent Richardson also testified that
Esparza's seized cell phone contained text messages from
"Lulu," who he determined to be the same person as
Dominguez.  This testimony confirmed that Esparza and
Dominguez in fact knew one another.  Esparza's remaining
witnesses were his mother and ex-girlfriend, who both
testified that he had never owned a car.  Esparza's mother
stated that he often crossed the border on foot and she would
pick him up in her car on the U.S. side.  Esparza's ex-
girlfriend also testified that in 2010, she introduced Esparza
to Dominguez, who was known to her as both "Julio" and
"Lulu."

During closing arguments, the only element in dispute
was Esparza's knowledge of the drugs.  The government's
argument relied in large part on the fact that "it was the
defendant's vehicle," as shown in the DMV documents
containing Hernandez's statement that she sold the car to
Esparza.  Esparza's counsel, on the other hand, argued that
he was an unwitting drug courier framed by Dominguez,
who lent him the car.   The defense asserted that after
Dominguez learned of Esparza's arrest, Dominguez
provided Sanchez with documents, including a Notice of
Transfer/Release of Liability that already had Esparza's
name filled out as the buyer.   Sanchez then gave those
documents to Hernandez, who, in turn, sent the Notice of
Transfer/Release of Liability to the DMV.  In its rebuttal
argument, the government repeated its claim that Esparza
bought the car a few days before his arrest.  The government

attacked the credibility of Esparza's witnesses, and reiterated that, "[a]gain, this defendant bought this vehicle. . . . He made a choice to enter that port of entry knowing he had drugs, hoping he would make it through."

The jury convicted Esparza. The district court sentenced him to 24 months of custody, followed by three years of supervised release. Esparza timely appealed.

## II

Esparza argues that the admission of the documents containing Hernandez's statement violated the Confrontation Clause of the Sixth Amendment. We review whether a defendant's rights under the Confrontation Clause were violated de novo. *United States v. Matus-Zayas*, 655 F.3d 1092, 1098 (9th Cir. 2011).

## A

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, the Supreme Court abrogated decades of Confrontation Clause jurisprudence, which had allowed the admission of an unavailable witness's out-of-court statement so long as it "falls under a 'firmly rooted hearsay exception'" or bears 'particularized guarantees of trustworthiness.'" 541 U.S. 36, 60, 62–69 (2004) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)). Instead, the Supreme Court held that a hearsay testimonial statement of a witness who does not appear at trial may never be used unless "the [witness] is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59. As the Court explained, the "bedrock procedural guarantee" of the

Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 42, 61.

While *Crawford* declined to provide a comprehensive definition of "testimonial," *see id.* at 68, the Court stated "[v]arious formulations of [the] core class of 'testimonial' statements:"

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52 (internal quotation marks, ellipsis, and citations omitted). The Court thus held that defendant Crawford's right of confrontation was violated when the state court admitted his wife Sylvia's statements in response to police interrogation, and she did not testify at trial. *Id.* at 40–42, 65–69. The Court found Sylvia's statements to be testimonial, because she made them "while in police custody, herself a potential suspect in the case." *Id.* at 65–69.

In a number of cases following *Crawford*, the Supreme Court provided further guidance on the parameters of testimonial evidence. For example, in *Davis v. Washington*, the Court held that statements made during a 911 call were nontestimonial because the "circumstances objectively indicat[e] that the primary purpose of the interrogation [was] to enable police assistance to meet an ongoing emergency." 547 U.S. 813, 822, 827–28 (2006); *see also Ohio v. Clark*, 576 U.S. —, 2015 WL 2473372, at *6 (2015) (holding that a child's statements to teachers concerning his abuse by the defendant were not testimonial because the primary purpose of the conversation was to "identify[] and end[] the threat" of violence during "an ongoing emergency"); *Michigan v. Bryant*, 562 U.S. 344, 361 (2011) (stating that "the prospect of fabrication in statements given for the primary purpose of resolving [an] emergency is presumably significantly diminished"). In contrast, statements made to the police during an interview at a witness's home about a domestic violence incident were testimonial. *Davis*, 547 U.S. at 829–30. There was no ongoing emergency, and "the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822, 829–30; *see also United States v. Brooks*, 772 F.3d 1161, 1169–70 (9th Cir. 2014) (holding that responses to a U.S. Postal Inspector's questions were testimonial because "a reasonable person would have understood the primary purpose to be investigative").

The Supreme Court has also emphasized that Confrontation Clause analysis does not turn on the statement's reliability, but rather on whether the out-of-court statement was "functionally identical to live, in-court testimony." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11, 317–18 (2009). Thus, the Court held in *Melendez-*

*Diaz* that a forensic analyst's certificates of analysis attesting to the results of drug tests were testimonial, and the defendant had the right to confront the analyst conducting the examination. *Id.* at 310–11. The Court rejected the government's argument that the certificates were akin to business or public records, explaining that such "records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324; *see also United States v. Bustamante*, 687 F.3d 1190, 1194 (9th Cir. 2012) (holding that a document created by a public official relating to person's birth was testimonial, and distinguishable from ordinary public records, because the official created it at the request of law enforcement for use in an ongoing criminal investigation).

**B**

Turning to Hernandez's statement, we easily conclude that it was testimonial. Prior to sending the Notice of Transfer/Release of Liability to the DMV, Hernandez was notified by CBP that her car had been seized because it was used to smuggle more than 50 kilograms of marijuana. Hernandez then called her ex-boyfriend Sanchez, upset that she was still the registered owner. Sanchez, in turn, confronted the man to whom he sold the car, Dominguez, and later received from Dominguez a DMV Notice of Transfer/Release of Liability form that indicated the car was sold to "Arturo Esparza." Upon receiving this Notice form from Sanchez, Hernandez signed it and sent it to the DMV, despite having no personal knowledge of who actually bought her car.

At the time that Hernandez made her statement that she sold the car to Esparza, she had a strong incentive to lie. As the registered owner of a car that had hidden compartments used to smuggle drugs, Hernandez faced potential criminal exposure. She knew of the ongoing investigation and made her statement "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 65 (internal quotation marks omitted); *cf. United States v. Marguet-Pillado*, 560 F.3d 1078, 1085 (9th Cir. 2009) (finding that a declarant's expectation that her statement may be used in a future trial is a key factor in determining whether hearsay is testimonial). Hernandez was essentially testifying as a witness who bore testimony against Esparza for purposes of the Sixth Amendment. *See Crawford*, 541 U.S. at 65–69. Additionally, Hernandez was available. Indeed, prior to trial, the government stated to the district court that it would call her as a witness. She was on the government's witness list, and was present in the courthouse on the second day of trial. Yet, the government elected not to call her, instead using the DMV documents as "weaker substitute[s] for [her] live testimony." *Davis*, 547 U.S. at 828 (quoting *United States v. Inadi*, 475 U.S. 387, 394 (1986)).

Relying mainly on *United States v. Morales*, 720 F.3d 1194 (9th Cir. 2013), and *United States v. Berry*, 683 F.3d 1015 (9th Cir. 2012), the government argues that Hernandez's statement was nontestimonial because the two documents reflecting her statement were public records created for the administration of the DMV's affairs. In *Morales*, we held that DHS field encounter forms prepared by CBP agents at the time that they arrested aliens were not testimonial. 720 F.3d at 1200–01. Comparing the

documents to business and public records, we concluded
their primary purpose was "administrative, not for use as
evidence at a future criminal trial."   *Id.*   In *Berry*, we
similarly held that Social Security application documents
were not testimonial when introduced in a later criminal
prosecution for Social Security fraud because, again
comparing the documents to business and public records, the
application was prepared by a Social Security employee "as
part of a routine administrative process," and not in
connection with a criminal investigation.  683 F.3d at 1022–
23.

   In contrast, Hernandez's statement was not created for
the routine administration of the DMV's affairs.  Of course,
we recognize that the DMV does, as part of its administrative
functions, maintain records of the sale and transfer of
registered vehicles.   But, unlike in *Berry* and *Morales*,
Hernandez was not an agency employee who prepared or
maintained documents as part of her official duties.  Nor was
she a private citizen who, in the course of a routine sale,
simply notified the DMV of the transfer of her car.  Instead,
her car had already been seized for serious criminal
violations, and she sent the transfer form to the DMV only
after receiving a Notice of Seizure from CBP.  That her
statement is contained in documents that might otherwise
qualify under a hearsay exception for public records makes
no difference to our analysis.  *See Crawford*, 541 U.S. at 61
(stating that "we do not think the Framers meant to leave the
Sixth Amendment's protection to the vagaries of the rules of
evidence").   We therefore hold that the admission of
Hernandez's statement contained in the Notice of
Transfer/Release of Liability and the DMV Printout violated
Esparza's rights under the Confrontation Clause.

## C

The government argues that, even if admission of Hernandez's statement violated the Confrontation Clause, the error was harmless. The government bears the burden of proving that the error was harmless beyond a reasonable doubt, *see Bustamante*, 687 F.3d at 1195, and we assess this issue by considering "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, . . . and, of course, the overall strength of the prosecution's case," *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Even when the government's case is "strong," a Confrontation Clause violation is not harmless where the erroneously admitted evidence could have "significantly altered the evidentiary picture." *Bustamante*, 687 F.3d at 1195.

Here, the question of who owned the car was critical because the only disputed element was Esparza's knowledge. The government used Hernandez's statement in its case-in-chief, when DHS Special Agent Glaze testified that the DMV Printout showed that Esparza owned the car that was used to smuggle the drugs. The government also used Hernandez's statement to impeach defense witness Sanchez, introducing the DMV Notice of Transfer/Release of Liability during his cross-examination. Finally, during closing, the prosecution relied heavily on both documents to argue that Esparza was the car's true owner and, therefore, must have known of the hidden drugs. In other words, the government used Hernandez's statement as "an out-of-court substitute for trial testimony." *See Bryant*, 562 U.S. at 358.

Contrary to the government's argument, we do not find Hernandez's statement to be merely cumulative of other evidence indicative of Esparza's knowledge. The

government relies on the fact that there was other proof that arguably showed Esparza's knowledge—namely, the fact that he drove the same car across the border on one other occasion, that the car had only one gallon of gas, and that the heating and air conditioning unit did not work properly. Nevertheless, the ownership of the car went to the heart of Esparza's defense that he borrowed it on the day of his arrest, and both sides argued vigorously regarding the car's actual ownership.  Had Hernandez testified, Esparza could have directly challenged her statement that she sold her car to him, rather than Dominguez.   Instead, the government used Hernandez's hearsay statement to gut Esparza's claim that he was an unknowing courier who borrowed the car from Dominguez, the real buyer of the car from Hernandez.  The government's heavy reliance on Hernandez's statement shows that it was "very important to the prosecution's case," and the statement's admission "may have significantly altered the evidentiary picture." *Bustamante*, 687 F.3d at 1195.  Therefore, the violation of Esparza's Confrontation Clause rights was not harmless.

* * *

We vacate Esparza's conviction and remand.  We need not address Esparza's remaining arguments on appeal.

**VACATED AND REMANDED.**